UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GAZMEN GJINI, | : | |
| | : | PRISONER |
| Petitioner, | : | No. 3:17-CV-662 (VLB) |
| | : | |
| v. | : | |
| | : | July 8, 2019 |
| WARDEN STEPHEN FAUCHER, | : | |
| | : | |
| Respondent. | : | |

**MEMORANDUM OF DECISION DENYING § 2254 APPLICATION FOR WRIT OF HABEAS CORPUS**

The Petitioner, Gazmen Gjini, an inmate currently confined at Corrigan-Radgowski Correctional Center in Uncasvillle, Connecticut, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 2013 Connecticut state court conviction for possession of a narcotic substance with intent to sell on two grounds: (1) he was denied a hearing pursuant to *Franks v. Delaware* in violation of his Fourth Amendment right to be free of unreasonable search and seizure and (2) his conviction for possession of a narcotic substance with the intent to sell is not supported by legally sufficient evidence. For the following reasons, the Application is denied.

I. <u>Standard of Review</u>

A district court may only entertain a petition for a writ of habeas corpus challenging a state court conviction if custody of the petitioner violates the Constitution or federal law. 28 U.S.C. § 2254(a). If a state court has rejected a

petitioner's claim on its merits, federal courts cannot issue a writ of habeas corpus unless the state proceedings either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, a petitioner must exhaust his remedies in state court unless there is no available state process or circumstances render the state process ineffective to protect his rights. 28 U.S.C. § 2254(b)(1).

"State-court decisions are measured against this Court's precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). A decision is "'contrary to' clearly established federal law . . . if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "The inquiry for the federal habeas court is not whether the state court's application of, or refusal to extend, the governing law was erroneous, but rather whether it was 'objectively unreasonable.'" *Davis*, 532 F.3d at 140 (quoting *Williams*, 529 U.S. 408-410). Thus, federal courts grant a writ of habeas corpus if the state court's decision "was so lacking justification that there was an error well understood and comprehended in

existing law beyond any possibility of fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Further, a federal court's review under § 2254 "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181. Factual determinations made by a state court are presumptively correct, and the petitioner may only rebut this presumption by presenting clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). These procedural safeguards protect the autonomy of state criminal proceedings against federal intrusion. *Harrington*, 562 U.S. at 103.

## II. Factual and Procedural Background

The Connecticut Appellate Court set forth the following facts leading to the Petitioner's surrender:

> In 2009, the Stamford Police Department was investigating the defendant for illegal drug related activities. . . . The police used a cooperating witness to pose as a drug buyer and to purchase illegal drugs from the defendant. . . . [O]n June 13, 2009, under the supervision and surveillance of the police, the cooperating witness met with the defendant at a restaurant located on West Main Street in Stamford . . . [and] "talked about drugs."
>
> One week following this initial meeting, . . . the cooperating witness contacted the defendant by telephone for the purpose of purchasing narcotics from him. . . . When the defendant arrived . . . , the cooperating witness got into the defendant's automobile, at which time she gave the defendant $80 in exchange for slightly less than one ounce of cocaine. . . .
>
> [O]n July 2, 2009, the defendant sold drugs to one or more cooperating witnesses. . . . After this interaction, one or more police officers observed the defendant drive to his

3

residence, a single family home located at 179 Cedar Heights Road in Stamford.

On August 13, 2009, the police obtained an arrest warrant for the defendant. That day, the police began to surveil the defendant's residence. The police observed an automobile that they had observed the defendant driving during the course of their investigation, a black 2009 Honda Accord with heavily tinted windows, parked in the driveway. The automobile was registered to Nahile Gjini, the defendant's mother. The police directed the cooperating witness to contact the defendant and arrange to purchase illegal narcotics from him. The cooperating witness informed the police that she had arranged for this transaction to take place at approximately 12:30 p.m., at the restaurant located on West Main Street in Stamford.

Shortly thereafter, the police observed the defendant exit the residence on Cedar Heights Road, get into the Honda, and drive to the restaurant located on West Main Street in Stamford, where he previously had sold narcotics to the cooperating witness. Two police officers traveling in an unmarked police automobile followed the defendant as he drove to the restaurant. . . .

When the defendant arrived, several police officers, in automobiles with lights and sirens activated, approached the defendant's automobile in an attempt to constrain his movement. . . . The defendant quickly sped away from the scene. . . . Several police officers engaged the defendant in a high-speed pursuit, but they were unable to apprehend him. . . .

Shortly thereafter, two police officers, Christopher Broems and Steven Perrotta, prepared search warrant applications covering the defendant's automobile and the defendant's residence on Cedar Heights Road in Stamford. . . . [T]he police executed the warrant at the defendant's residence, where the defendant's mother and an attorney were present. There were three bedrooms in the residence: one used by the defendant's mother, one used by the defendant's brother, and one used by the defendant. During their search of the defendant's bedroom, the police found approximately fifty grams of cocaine in a nightstand. Also in the bedroom, the police

> found a number of items (including rubber gloves, plastic bags, a digital scale, a substance frequently used as a cutting agent for drugs and six cell phones) that were consistent with the illegal sale of narcotics. The police found approximately $13,000 in the residence, a large portion of which was found concealed in a bathroom that was located near the defendant's bedroom.
>
> [O]n August 18, 2009, the defendant, facing arrest under two warrants, turned himself in to the police.

*State v. Gjini*, 130 A.3d 286, 298-99 (Conn. App. Ct. 2015).

On March 26, 2013, the Petitioner filed a pretrial motion for a hearing pursuant to *Franks v. Delaware*. *Id.* at 291 n.6. The Petitioner argued that the affidavit supporting Officers Broem and Perrotta's application for a search warrant contained false and misleading statements. *Id.* at 292. Namely, the Petitioner contested the averments in paragraph two that he was "currently on probation" and in paragraph four that Broem observed him driving directly from the July 2, 2009 transaction to 179 Cedar Heights Road. *Id.* After conducting a hearing, the trial court concluded that even without the information contained in paragraphs two and four, "an independent, detached magistrate could find probable cause for the search of 179 Cedar Heights Road." *Id.* at 294.

On May 3, 2013, a jury convicted the Petitioner of selling narcotics in violation of Connecticut General Statutes Section 21a-277(a), engaging police in pursuit in violation of Section 14-223(b), and possessing a narcotic substance with the intent to sell in violation of Section 21a-277(a). [Dkt. 10 (Am. Appl. Writ of Habeas Corpus) at 2]. On July 2, 2013, the trial court imposed a total effective sentence of 10 years of incarceration. [Dkt. 17 (Resp't's Mem.) at 3].

5

On direct appeal of his conviction, the Petitioner challenged (1) the trial court's ruling on the *Franks* hearing motion and (2) the sufficiency of the evidence supporting the jury verdict—the same grounds raised in his present application. [Dkt. 17-1 (Brief of Def.-Apellant)]. On December 29, 2015, the Connecticut Appellate Court affirmed the trial court's ruling on the *Franks* hearing motion, stating that the affidavit set forth facts

> upon which a magistrate reasonably could infer that the defendant was present in the subject residence when he agreed to sell narcotics and exited the subject residence, with the narcotics, and drove directly to the agreed upon sale location. . . . Although it is not a necessary inference, it would be reasonable for a magistrate to infer, based on the facts in the affidavit that the defendant was selling drugs out of his residence, that he stored narcotics and other evidence related to the sale of narcotics in his residence, rather than in an automobile that was registered to a third party.
>
> It is significant, as well, that the facts surrounding the defendant's attempted sale of narcotics to the cooperating witness occurred on the same day that the police applied for the search warrant for the residence. . . . It was reasonable to infer that a drug dealer, such as the defendant, likely maintained an inventory of the drugs that he sold, instrumentalities related to the sale of narcotics, and records related to his narcotics sales, and that such contraband would have been present in the residence from which the defendant attempted to sell narcotics to the cooperating witness earlier that very day.

*Gjini*, 130 A.3d at 289-291. The Appellate Court further concluded that the state presented sufficient evidence during trial to support a constructive possession conviction, including evidence that the Petitioner resided at 179 Cedar Heights Road, that the bedroom in which the cocaine was found belonged to him, and that he was engaged drug transactions throughout the summer of 2009. *Id.* at 301-02.

6

The Petitioner then sought review by the Connecticut Supreme Court. On March 30, 2016, the state supreme court denied his application. *State v. Gjini*, 134 A.3d 621 (Conn. 2016). On July 26, 3016, the Petitioner initiated a state habeas corpus proceeding for ineffective assistance of counsel, which remains pending. *Gjini v. Comm'r of Corr.*, No. CV16-4008249-S (Super. Ct., Jud. Dist. of Tolland).

On April 21, 2017, the Petitioner filed the present application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### III. Discussion

The Petitioner asserts two grounds for relief in the instant action: (1) "[t]he unconstitutional and/or improper state court denial of the trial defendant's motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978)" in violation of the Fourth, Fifth and Fourteenth Amendments and (2) "the unconstitutional and/or improper state court failure to dismiss charges of possession of narcotics with intent to sell and/or ruling that the petitioner was in physical control of the house or apartment dwelling where the unconstitutional search and seizure was executed and where narcotics and money were found" in violation of the Fifth and Fourteenth Amendments. [Dkt. 10 at 9, 11 & Attach. 1, 2].

#### A. Denial of *Franks* Hearing

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154,

155-56 (1978). Petitioner claims that the trial court incorrectly denied his motion for a *Franks* hearing in violation of the Fourth Amendment, as applied to the states by the Fourteenth Amendment. [Dkt. 10-1 at 1]. Specifically, the petitioner contends Officers Broem and Perrota intentionally or with reckless disregard for the truth, made false statements, such that there was no probable cause for the search of 179 Cedar Heights Road. [Dkt 10-1 (Attach. 1) at 2]. The Petitioner asserts that, therefore, evidence found in the residence should have been excluded at trial. *Id.* The Respondent argues that the Petitioner's Fourth Amendment claim "is barred under *Stone v. Powell*." [Dkt. 17 at 9-13].

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494. The exclusion at trial of evidence collected in violation of the Fourth Amendment "is not calculated to redress the injury to the privacy of the victim of the search or seizure," but to remove the incentive for law enforcement to violate the Fourth Amendment. *Id.* at 484. On collateral review, the deterrent effect of the exclusionary rule is attenuated and outweighed by the societal cost of excluding highly-probative physical evidence from criminal proceedings. *Id.* at 489-494. Thus, a petitioner seeking habeas corpus relief under 28 U.S.C. §2254 for a Fourth Amendment violation must first demonstrate that the state did not provide an opportunity for full and fair litigation the claim. *Id.* at 494.

A petitioner is denied a full and fair opportunity to litigate a claim where (1) the state failed to provide any corrective process for the Fourth Amendment claim or (2) the petitioner is precluded from using the state-provided process by an unconscionable breakdown in the process. *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). The state court procedures may be adequate even if the state court decided the issue erroneously. *See id.* at 71. An "unconscionable breakdown" must be so serious that no state court has conducted a reasoned inquiry into the relevant questions of fact and law. *Id.*; *St. Louis v. Erfe*, 2016 U.S. Dist. LEXIS 50185, at *32-33 (D. Conn. Apr. 14, 2016) (holding that disagreement with ruling was not breakdown in corrective process); *see also Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)) (indicating that unconscionable breakdown must "call into question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society" and giving examples like mob violence, bribery, knowing use of perjured testimony, or torture).

Here, the Petitioner availed himself of a corrective procedure provided by the State of Connecticut when he filed a motion for a *Franks* hearing on March 26, 2013 and a supplemental motion on April 16, 2013. *See Gjini*, 130 A.3d at 291 n.6. As evinced by the judge's detailed reasoning in his ruling from the bench, the trial court thoroughly considered the contents of the warrant affidavit and the arguments in the motion. *Id.* at 293-94. Based on that consideration, the judge found that there were sufficient facts in the warrant affidavit, absent the false information, to support a finding of probable cause. *Id.* at 297.

9

Petitioner then appealed the trial court's decision and received a full review of the merits. See *Gjini*, 130 A.3d at 296-99. The Appellate Court affirmed the decision of the trial court. *Id.*

The Petitioner does not contend that he was precluded from utilizing the state's corrective procedure, but that "[t]he state prosecutor conceded that portions of Paragraph Two of the search warrant was [sic] 'inaccurate.' . . . However, the state court (Judge Hudock) denied the petitioner's application/motion in all respects." [Dkt. 10-1 at 2-3]. Thus, Petitioner seems to argue that based on the prosecutor's admissions, the state court should have granted his motion for a *Franks* hearing. Considering Petitioner's *pro se* status, the Court interprets this as an argument that the failure to do so constituted an unconscionable breakdown in the State's corrective. See *Capellan*, 975 F.2d at 70.

This argument fails because circumstances surrounding the trial court and appellate court rulings do not constitute an unconscionable breakdown in the State's corrective process. First, the Court concludes that the trial court and subsequently the Connecticut Appellate Court thoroughly and appropriately applied the law in denying Petitioner's motions for a *Franks* hearing because the admittedly inaccurate statements in the affidavit were not necessary to a finding of probable cause. See *State v. Ferguson*, 796 A.2d 1118, 1138 (Conn. 2002) (affirming denial of *Franks* hearing where remaining unchallenged allegations were sufficient for probable cause). They thus conducted a reasoned inquiry into the relevant questions of fact and law. See *Capellan*, 975 F.2d at 71.

10

Even if the trial court erroneously denied Petitioner's motions for a *Franks* hearing, this Court still could not find that an unconscionable breakdown of the corrective process occurred. *See id.* The Petitioner received the full and fair state process without any allegation of outside interference or improper conduct that "calls into question whether [his] conviction [was] obtained pursuant to those fundamental notions of due process." *See Capellan*, 975 F.2d at 71. Petitioner's disagreement with the outcome does not establish an unconscionable breakdown. *St. Louis*, 2016 U.S. Dist. LEXIS 50185, at *32-33 (finding State of Connecticut provided full and fair opportunity to litigate Fourth Amendment claims where defendant's motions to suppress and for *Franks* hearing were denied). Accordingly, this Court cannot grant federal habeas corpus relief to the Petitioner on the basis of his Fourth Amendment claim. *Stone*, 428 U.S. at 494.

B. <u>Sufficiency of Evidence</u>

The Court construes the Petitioner's second ground as a claim under the due process clause of the Fourteenth Amendment that his conviction was not supported by evidence necessary to convince a trier of fact of the Petitioner's guilt beyond a reasonable doubt. In particular, the Petitioner asserts that his conviction for possession of a narcotic substance was not supported by evidence of any narcotics on his person or in his vehicle nor by any evidence that he resided in or exercised control over 179 Cedar Heights Road where narcotics were found.[1] [Dkt.

---

[1] The Petitioner also argues that "[t]herefore, no probable cause existed to issue a search warrant at that specific address." [Dkt. 10 Attach. 2]. As explained above,

11

10 Attach. 2]. The Respondent argues that the Connecticut Appellate Court reasonably applied the applicable federal law as laid out in *Jackson v. Virginia* when it held that a reasonable jury could conclude that the Petitioner exercised dominion and control over the cocaine found in the bedroom. [Dkt. 17 at 21-26].

A § 2254 petitioner challenging the sufficiency of the evidence supporting his conviction must overcome "two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *see also Garbutt v. Conway*, 668 F.3d 79, 81 (2d. Cir. 2012) ("We review collateral challenges to the sufficiency of the evidence supporting a state-court jury's verdict under a doubly deferential standard of review."). First, as explained above, the federal court must defer to the state court decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d); *Coleman*, 562 U.S. at 651 (holding that an erroneous decision may still be objectively reasonable). Second, the federal court must defer to the jury's conviction by drawing all permissible inferences in favor of the prosecution. *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002). In other words, the court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The prosecution's case may be based entirely on circumstantial evidence and "need not refute every possible hypothesis supporting a defendant's innocence." *Id.*

---

this Court cannot review the Petitioner's claims related to probable cause for the search warrant.

Here, the Petitioner must show that no rational factfinder could have found beyond a reasonable doubt that Petitioner possessed the cocaine discovered at 179 Cedar Heights Road and that the jury's and appellate court's determination to the contrary was objectively unreasonable. *Jackson*, 443 U.S. at 319; *Davis*, 532 F.3d at 140. Section 21a-277, the statute Petitioner was convicted under, requires that the defendant (1) possessed narcotics and (2) intended to sell such narcotics to another person. *Gjini*, 130 A.3d at 299. The Petitioner does not assert any claim regarding his intent nor did he on direct appeal. Thus, the only issue exhausted for federal review is the sufficiency of evidence supporting the possession element. *Picard v. Connor*, 404 U.S. 270, 275 (1971) (holding federal habeas corpus claims must first "be fairly presented to the state courts").

A defendant may constructively possess something even though he has no physical contact with it or legal title to it. *State v. Williams*, 956 A.2d 1176, 1184 (Conn. App. 2008). To illegally possess a drug under Connecticut law, a defendant must know the substance in question is a drug, know of the substance's presence, and exercise dominion and control over the substance. *Id.* at 1183. Knowledge and control may be proved circumstantially and are more easily shown if the defendant has exclusive possession of the area in which the drugs are discovered. *Id.* However, in situations where possession of the area is non-exclusive, the prosecution must produce incriminating statements or circumstances to support the inference that the defendant knew of the presence of narcotics and had control over them. *Id.* Such evidence must show "a compelling correlation between the actions of a defendant prior to arrest and the conclusion of dominion and control,"

not merely "a temporal and spatial nexus" between the defendant and the contraband. *State v. Billie,* 2 A.3d 1034, 1040-41 (Conn. App. 2010). Constructive possession of items in a residence is bolstered by the low likelihood of potential possession by co-occupants. *See State v. Goodrum*, 665 A.2d 159, 163 (Conn. App. 1995) (finding brother's testimony that paper bag containing drugs did not belong to him supports inference of constructive possession where brother and defendant were only keyholders to apartment).

Although fair-minded jurists could have reached a different outcome, the Connecticut Appellate Court was objectively reasonable in its conclusion that the Petitioner knew of and controlled the fifty grams of cocaine found in the residence. A rational factfinder could readily infer that the Petitioner resided at 179 Cedar Heights Road. This inference was supported by testimony that police officers had observed the Petitioner entering and leaving the single-family residence multiple times over the course of the summer, that the Petitioner's address on file with the Department of Motor Vehicles was 179 Cedar Heights Road, and that the Petitioner drove to drug transactions in a black Honda Accord registered under his mother's name to 179 Cedar Heights Road. *Gjini*, 130 A.3d at 301.

While the Petitioner's presence in the residence alone would establish only a temporal and spatial nexus between the Petitioner and the cocaine, the court's finding that the bedroom containing the cocaine belonged to the Petitioner rather than another occupant bolsters a constructive possession charge. *Compare State v. Nova*, 129 A.3d 146, 154-55 (Conn. App. 2015) (rejecting state's argument that defendant's frequent visits to shared apartment where drugs, drug paraphernalia,

and two documents bearing his name were found demonstrated constructive possession), *with State v. Baldwin*, 509 A.2d 76, 79 (Conn. App. 1986) (finding conflicting evidence regarding residency and possession sufficient for jury to convict defendant for possession of drugs discovered in one bedroom with photos of him and drug paraphernalia in shared kitchen). The state appellate court found there were three bedrooms in the residence: one used by the Petitioner's mother, one by his brother, and one by the Petitioner. *Gjini*, 130 A.3d at 290. It then determined that the cocaine was found in the Petitioner's bedroom. *Id.* at 290-91. These determinations were corroborated not only by an envelope addressed to the Petitioner found in the bedroom in question, but also by the statement of the Petitioner's mother, Nahile Gjini, that one of the other bedrooms was hers and by Officer Perrota's testimony that the remaining bedroom belonged to the Petitioner's brother because it contained "personal items that had [the brother's] name" and was not "messy" or "lived in." *Gjini*, 130 A.3d at 301-02; *Goodrum*, 665 A.2d at 163. Testimony from another police officer indicated that the Petitioner's brother had not been seen at the residence during the course of the summer. [Dkt 17-6 (Tr. Apr. 30, 2013) at 181]. Taken as a whole, the testimony at trial was sufficient for a reasonable jury to infer that the cocaine was found in the Petitioner's room and conclude that he was more likely than other occupants to possess the contraband. *See Baldwin*, 509 A.2d at 79.

Moreover, the Petitioner's documented involvement in drug transactions showed a compelling correlation between his actions and the conclusion that he knew of and exercised dominion and control over the cocaine in the residence. *See*

*e.g.*, *State v. Frazier*, 665 A.2d 142, 149 (Conn. App. 1995) (finding constructive possession of drugs supported by defendant's sale of drugs to informant two weeks earlier); *cf. Nova*, 129 A.3d at 155-56 (finding defendant's presence in residence did not indicate knowledge or control of drugs therein where evidence of defendant's involvement in prior drug transaction was weak). The state produced evidence that the Petitioner sold cocaine to one or more cooperating witnesses between June and August of 2009. *Gjini*, 130 A.2d at 289-90. Officers observed the defendant driving from 179 Cedar Heights Road to a planned drug transaction on the same day that the search of the residence was conducted. *Id.* at 301. Although the transaction was not completed, the Petitioner's flight from the scene when approached by police supports a reasonable factfinder's conclusion that the Petitioner constructively possessed drugs. *See Frazier*, 665 A.2d at 149 (finding that providing a false name to police officers was incriminating circumstance). Overall, the state presented sufficient evidence of incriminating circumstances for a rational factfinder to conclude that the Petitioner constructively possessed the cocaine in 179 Cedar Heights Road even though he was not the only occupant. *Gjini*, 130 A.2d at 289-90.

The Court recognizes that a reasonable factfinder may have determined that there was not enough evidence to connect Petitioner to the bedroom where the cocaine was discovered—no witness testified to seeing the Petitioner inside the bedroom in question, and the empty envelope was the only item inside the bedroom readily linked to him. [Dkt. 17-1 at 25]. But Petitioner has not shown that, viewing the evidence presented in the light most favorable to the prosecution, *no*

rational trier of fact could have found the that Petitioner was in constructive possession of the cocaine. Even further, Petitioner has not shown that the Connecticut Appellate Court was objectively unreasonable in holding that sufficient evidence existed. Accordingly, the Court denies the Petitioner's application for a writ of habeas corpus on the ground of insufficient evidence.

IV. Conclusion

For the foregoing reasons, the Court denies Petitioner's § 2254 Application for a Writ of Habeas Corpus. The Petitioner has not made a substantial showing of the denial of a constitutional right. Thus, an appeal of this order would not be taken in good faith and a certificate of appealability will not issue. The Clerk is directed to close the case.

IT IS SO ORDERED.

\_\_\_\_/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut this 8th day of July, 2019.